[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11330
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-00279-WKW-CSC

THOMAS W. HOLMES,

Plaintiff-Appellant,

versus

ALABAMA BOARD OF PARDONS & PAROLES,

Defendant-Appellee,

WILLIAM W. WYNNE, JR., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(November 13, 2014)

Before HULL, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Thomas W. Holmes, a white male Probation and Parole Officer, appeals the grant of summary judgment to his employer, the Alabama Board of Pardons and Paroles ("Board"), in his suit alleging, inter alia, violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, when the Board failed to promote him to Senior Officer based on his race and gender or to District Manager based on his race. On appeal, Holmes argues that the district court erred by: (1) granting summary judgment on his Senior Officer claims; and (2) finding that he had failed to exhaust his administrative remedies as to his District Manager claim.[1]  After review, we affirm.

## I.  FACTUAL BACKGROUND

### A.    Promotion of Probation and Parole Officers

Because Holmes's claims involve the Board's failure to promote him to Senior Officer or District Manager positions, we first review the Board's promotion process.

Under Alabama's merit system, an entry-level Probation and Parole Officer (or PO I) with two years of service is eligible for promotion to Senior Officer (or

---

[1]On appeal, Holmes does not challenge the district court's order dismissing: (1) all of his claims against the individual defendants; (2) his claims under the Age Discrimination in Employment Act, 42 U.S.C. §§ 1981 and 1983, and state law; and (3) his Title VII hostile work environment claim.  Accordingly, Holmes has abandoned any issues with respect to these claims. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

2

PO III) or District Manager (or PO IV).[2]  To be promoted, the officer must apply

with the State Personnel Department, which administers tests to all eligible

applicants.  The State Personnel Board then places the applicants on a promotional

register, or "certificate of eligibles," and groups the applicants in "bands" based on

their test scores.  Applicants within a band have statistically similar test scores and

are considered equally ranked within the applicant pool.  This promotional register

lists the top ten "eligibles" and all applicants who tied the tenth highest eligible.

Applicants are ranked both statewide and by preferred county.  An applicant may

share his statewide or county rank with other applicants.

Because the register for Senior Officer promotions is "continuous," officers

wishing to be considered for those promotions must retake the Senior Officer test

periodically to avoid falling off the register.  Consequently, names and rankings on

the Senior Officer register frequently change as old names receive promotions or

fall off and new names are added.

The District Manager classification has a separate test and promotional

register.  Unlike the Senior Officer register, the District Manager register is

"closed," meaning the State Personnel Department opens the register for only a

---

[2]In late 2011, the Board changed the promotion protocol to require two years of service in the Senior Officer classification to be eligible for promotion to District Manager.  At the time of the events giving rise to Holmes's claims, however, an entry-level officer with two years of service could apply for promotion to District Manager.

3

short period to accept applications for a vacancy and then closes the register again until there is another vacancy.

The Board had a promotion protocol, effective August 15, 2009, for promoting officers to supervisor or manager positions within the agency.  The 2009 protocol contains a list of objective criteria that must be considered in making promotional decisions, including the candidate's: (1) band number; (2) advanced degrees; (3) years in law enforcement, social services, or rehabilitation services; (4) unique objectively-based qualifications; (5) supervisory experience; and (6) past three years of performance appraisals, disciplinary actions, reprimands, and written warnings.  The 2009 protocol also contains a list of subjective criteria, including: (1) the candidate's audits and statistical reports; (2) the last three years of supervisors' evaluations; (3) additional written input from the current supervisor; (4) the candidate's writing sample and resume; and (5) the interview. The evaluating committee or person has direct access to each candidate's personnel file and may be provided "candidate packets" of information "to use in deliberating."

Under the 2009 protocol, once the Board identifies a Senior Officer or District Manager vacancy, the Board requests a certified promotional register from the State Personnel Department, which the Board uses to fill the vacancy.  A person or committee interviews applicants from the register and then completes

4

two worksheets of notes evaluating the candidates based on the objective and subjective criteria. The criteria are not weighted. Each evaluator has discretion in assigning weight to the criteria, and the worksheets are merely tools used to evaluate each interviewed candidate. After evaluating the candidates and deliberating, the person or committee recommends a candidate for promotion up the chain of command. Ultimately, the Board votes on the recommendation and has discretion in making the final promotion decision.[3]

## B.    Holmes's Employment

In February 2001, Holmes began working as a Probation and Parole Officer, most of that time in the field office in Montgomery, Alabama, where he lives. In March 2009, Holmes moved to the Montgomery field office's Pardon Unit, where he primarily processed pardon applications. In this assignment, Holmes did not ordinarily perform routine probation and parole officer field work, such as supervising offenders, maintaining field notes, participating in arrests, attending revocation hearings, preparing PSI reports or parole plans, collecting fees and arrearages, collecting DNA samples, and performing drug tests. On June 16, 2013,

---

[3]The record also contains a different, 2010 promotion protocol, effective December 6, 2010, applicable to all classifications of Board employment. Under the 2009 protocol, all candidates on the register were interviewed and under the 2010 protocol, all candidates on the register were "considered," but only some were interviewed. The 2010 protocol does not contain lists of objective and subjective criteria that must be considered.

For summary judgment purposes, we assume that the 2009 protocol, which was specific to probation and parole officers, still applied.

Holmes was promoted to Senior Officer in the Montgomery Central Office's Pardon Unit.

Throughout his employment, Holmes received generally positive evaluations, although a few evaluations noted issues with timeliness and attention to detail. Additionally, Holmes's personnel file contains some disciplinary actions during the years before he moved to the Pardon Unit, including: (1) a 2003 reprimand for failing to accurately report an offender's sentence end date, which led to three months of wrongful incarceration; (2) notes in his 2003 evaluation about the failure to comply with arrest procedures; (3) a 2004 written reprimand for improper use of an assigned cell phone, making an insubordinate statement, and conducting field activities without the presence of another officer, in violation of office policy; and (4) a 2006 written warning for making an unauthorized request for the criminal history of a supervisor.

## C.    Senior Officer Promotions

In either 2004 or 2005, Holmes first took the Senior Officer test and began applying for promotion. Thereafter, Holmes periodically re-took the Senior Officer test when he received notice that he had dropped off the register. At one point, Holmes was on the register statewide, but later (Holmes does not know when), he changed his desired locations to counties around Montgomery.

6

Holmes claims that he was consistently passed over for Senior Officer promotions in favor of officers who were African-American or female. Holmes's peers frequently commented to him that Holmes was "not the right color" for promotion, but Holmes did not hear this comment from supervisors in his chain of command. Holmes believed he was denied promotions based on his race and gender because he "continually" saw less experienced and less educated African-American and female officers get promoted rather than him. Holmes also believed there was a conspiracy within upper management to ensure African-American and women officers were promoted to Senior Officer positions.

State Personnel Department records indicate that, between January 2005 and April 2013, a total of 95 Probation and Parole Officers were promoted to Senior Officer throughout the state. Of those 95 promotions, 58 officers were white, and 62 officers were male. In other words, during the time Holmes was applying for Senior Officer promotions, white and male officers received more Senior Officer promotions than anyone else.

It is undisputed that Holmes did not receive a promotion until June 2013. Before 2009, however, it is unclear how often Holmes's name appeared on the Senior Officer register, whether and when he was available for promotion statewide, and how often he was considered or interviewed for promotion. According to State Personnel Department records, between January 2009 and

August 2011, 36 Senior Officer promotions occurred. During that time, Holmes's name appeared on only six Senior Officer promotional registers. In other words, during the period for which there are records, Holmes was eligible for less than twenty percent of the Senior Officer promotions.

Holmes's appeal involves only three Senior Officer promotions in the Montgomery field office, all of which occurred in 2011.[4] Holmes appeared on the register, and was considered and interviewed, for each of these three promotions, but ultimately was not selected. Instead, the Board promoted Elizabeth Planer, a white woman, and Reginald Carter, an African-American man, on April 27, 2011, and Christopher Causey, an African-American man, on June 30, 2011.[5]

State Personnel Department records reflect that Planer, Carter, Causey, and Holmes all fell within the same "band" on the promotional registers and thus were equally ranked. While Holmes had a masters degree, Carter had a law degree, and

---

[4]The district court concluded that these three Senior Officer promotions were the only promotions that occurred within 180 days of Holmes's filing of his charge with the Equal Employment Opportunity Commission ("EEOC") and thus were the only failure-to-promote claims that were not time-barred. See 42 U.S.C. § 2000e-5(e)(1) (requiring an employee in a non-deferral state such as Alabama to exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice). On appeal, Holmes does not challenge this ruling, and we do not address it.

[5]Holmes heard rumors within the agency that some African-American and female officers received help preparing their answers to the take-home Senior Officer test and complained to upper management, the State Personnel Department, and the Alabama Attorney General's Office. After a 2010 internal affairs investigation, a new Senior Officer test was introduced in March 2011. Holmes did not present any evidence that the three successful promotees for Holmes's claims (Carter, Causey, or Planer) received help with respect to their 2011 promotions and admitted in his deposition that he did not know whether any of them had cheated on the Senior Officer test.

Causey and Planer had bachelors degrees. Holmes had more years of experience at the agency than Carter, Causey, or Planer.

## D.     District Manager Promotions

At some point (Holmes does not remember when), Holmes took the District Manager test and began to apply for District Manager promotions. Although it was theoretically possible to be promoted directly to District Manager without first being promoted to Senior Officer, Holmes was unaware of any such promotions. Between January 2005 and April 2013, 19 officers were promoted to District Manager, 12 of whom were white and 13 of whom were male.

In October 2008, Holmes's name appeared on a newly created promotional register for a District Manager position, along with 67 other candidates. Ten candidates were listed in band 01. Holmes and 42 other candidates were listed in band 02, and the remaining 15 candidates were listed in band 03. Thus, at that time, Holmes was "ranked" eleventh in the state, but he was tied for that position with 41 other band 02 applicants. On November 26, 2008, Stephanie Woodruff, a black woman who also was on band 02, received the promotion.

According to a printout from the State Personnel Board's website, in August 2010, Holmes's name appeared on a "current" promotional register for a District Manager position. The printout listed Holmes's statewide rank as tenth, but did not indicate how many other candidates were on the register. State Personnel

9

Department records indicate, however, that no District Manager promotions occurred in 2010. In July and August 2011, three white males were promoted to District Manager positions. Holmes appeared on those promotional registers, and was considered for the three promotions, but was not selected.

### E.    EEOC Charge

Shortly thereafter, in late July and early August 2011, Holmes wrote two letters to the EEOC claiming race and gender discrimination in the Board's failure to promote him to a Senior Officer position and age discrimination in failing to promote him to any of the three 2011 District Manager positions. On August 9, 2011, Holmes filed a formal charge of discrimination based on these claims.

### F.    Post-Charge District Manager Promotion

On September 13, 2011, after Holmes filed his EEOC charge, a third District Manager promotion occurred. Specifically, Roderick Chambers, a black male Senior Officer was promoted to District Manager in the Montgomery field office. The record does not reflect whether Holmes appeared on the register for this District Manager position. In a subsequent letter to the EEOC, Holmes cited the Board's failure to promote him to Chambers's District Manager position as another example of his employer promoting a "younger, less educated, and less experienced" candidate than Holmes.

10

After the EEOC issued a right to sue letter, Holmes filed this action in the district court. The district court granted the Board's summary judgment motion with respect to both the Senior Officer and District Manager failure-to-promote claims. As to the Senior Officer claims, the district court concluded that Holmes failed to present evidence establishing his prima facie case. As to the District Manager claims, the district court found that Holmes claimed only age discrimination in the EEOC and that his race and gender discrimination claims were "beyond the scope of the EEOC charge."

## II.  THREE SENIOR OFFICER PROMOTIONS

### A.    McDonnell-Douglas Framework

Where, as here, a Title VII plaintiff uses circumstantial evidence to prove discrimination, we apply the burden-shifting approach articulated in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010). Under this approach, the plaintiff must first make a prima facie case of discrimination. Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). If the plaintiff does so, a presumption of discrimination arises, and the burden of production, but not persuasion, shifts to the employer to articulate a legitimate, non-discriminatory reason for the promotion decision. Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 (11th Cir. 2013). If the employer meets its burden, the burden shifts back to

11

the plaintiff to produce evidence that the proffered reason was a pretext for discrimination. Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1347 (11th Cir. 2007). While the intermediate burdens of production shift back and forth, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

## B.    Prima Facie Case

To state a prima facie case, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) the position was filled with an individual outside the protected class. Walker v. Mortham, 158 F.3d 1177, 1186, 1193 (11th Cir. 1998). In Walker, this Court concluded that the plaintiff need not establish as part of the prima facie case that the promoted employee was equally or less qualified than the plaintiff. Id. at 1193. Since Walker, some of this Court's decisions state that the fourth element does require the plaintiff to show that the promoted employee was equally or less qualified. See, e.g., Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253 (11th Cir. 2000). We need not resolve this conflict because, even assuming arguendo that Holmes satisfied his prima facie case, Holmes failed to rebut the

12

Board's legitimate, non-discriminatory reasons for not promoting him. See

Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235-36 (11th Cir. 2004)

(explaining that we may affirm the district court's grant of summary judgment on

any legal ground supported by the record, regardless of whether the district court

relied on that ground).

## B.    Pretext

To show pretext, the plaintiff cannot recast the employer's proffered reason,

but must meet the reason "head on and rebut it." Chapman v. AI Transport, 229

F.3d 1012, 1030 (11th Cir. 2000) (en banc). The plaintiff must show both that the

reason was false and that discrimination was the real reason. Brooks v. Cnty.

Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). At this

stage, a "new level of specificity" applies, and the plaintiff must demonstrate "such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable

factfinder could find them unworthy of credence." Rioux v. City of Atlanta, 520

F.3d 1269, 1275 (11th Cir. 2008); see also Earley v. Champion Int'l Corp., 907

F.2d 1077, 1081 (11th Cir. 1990) (explaining that the plaintiff must "present

concrete evidence in the form of specific facts which show that the defendant's

proffered reason is mere pretext. Mere conclusory allegations and assertions will

not suffice"). If the employer proffers more than one reason, the plaintiff must rebut each of them to survive summary judgment. Chapman, 229 F.3d at 1037.[6]

The Board proffered two reasons for its decisions not to promote Holmes to the three Senior Officer positions—Holmes's disciplinary record and his specialization in pardon work in the Montgomery field office. Specifically, although Holmes's disciplinary matters were not a bar to his promotion, they influenced his supervisors' recommendations regarding whether to promote him. The Board further explained that while Holmes's specialization in pardon work was a negative factor for promotion to a field office supervisor, it was a positive factor in 2013, when Holmes was promoted to Senior Officer within the Montgomery Central Office Pardon Unit.

Holmes attempted to rebut the Board's reasons by showing that he was more qualified than the promoted employees because he had a masters degree and had more years of experience as a parole and probation officer. Holmes pointed to the Board's 2009 promotion protocol, which listed among its objective criteria the candidate's advanced degrees and years in law enforcement.

---

[6]We review de novo the grant of summary judgment, construing the facts and drawing all reasonable inferences from those facts in the light most favorable to the non-moving party. Moton v. Coward, 631 F.3d 1337, 1341 (11th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

14

Holmes also relied upon his own declaration, in which he provided generalized information about Senior Officer promotions by race and gender between 2007 and 2011.  Although Holmes's declaration claimed that he "learned" this information from "examination of the discovery" materials the Board had produced, he did not submit any of those discovery materials to the district court. [7] The Board did submit some of those discovery materials, including State Personnel Department's records of Senior Officer and District Manager promotions, which demonstrated that Holmes's data was in fact inaccurate.  Holmes further stated his own conclusory opinion that he was more qualified than all the individuals promoted because he was "more highly ranked and had superior education and experience."

Holmes's declaration did not specifically address the qualifications of Causey, Carter, and Planer.  Holmes claimed that "Carter was promoted with disciplinary warnings and reprimands in his file," but did not provide any details or attach any supporting documents.  Holmes made no claims about Causey's and Planer's disciplinary record and did not provide information about the three

---

[7]Specifically, Holmes's declaration stated that, based on his "examination of the discovery in this case," he had "learned that 23 officers were awarded promotions" to Senior Officer between January 2007 and August 2011, and that "22 of these 23 promotions were awarded to officers who were nonwhite and/or female."  Holmes further stated that he learned "[f]rom [his] examination of the applications of these officers," that "none of the 23 officers selected for promotion has more experience that [sic] [he] did, and 12 had less than three years' experience" and that "18 of the 23 officers selected for promotion . . . did not possess a graduate degree."  But, Holmes did not submit any of the discovery he claimed to have reviewed.

promoted officers' work experience or areas of specialization.  Further, Holmes did not dispute his own disciplinary record or that, as a pardons specialist, he ordinarily did not perform field duties.

By focusing on his years of experience and advanced degree, Holmes merely quarreled with the wisdom of the Board's reasons for not promoting him in 2011 and did not address those reasons "head on."  See Chapman, 229 F.3d at 1030. Additionally, Holmes's declaration made only conclusory assertions that the officers receiving promotions were less qualified, which is not sufficient to show pretext.  Instead, Holmes needed to present "concrete evidence in the form of specific facts" rebutting the Board's reasons.  See Earley, 907 F.2d at 1081; see also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (explaining that "conclusory allegations without specific supporting facts have no probative value" in opposing summary judgment).  For example, Holmes did not present evidence that Causey, Carter, and Planer had similar disciplinary records or that they also specialized in pardon work.  Indeed, Holmes failed to present almost any evidence at all of the three promoted employees' qualifications, whether linked to the Board's proffered reasons or not.  Thus, Holmes failed to show that Causey, Carter, and Planer were less qualified than him, much less that there was a disparity in qualifications "of such weight and significance" that a reasonable

16

person could not have chosen Causey, Carter, and Planer over Holmes.  See Kidd, 731 F.3d at 1206.

Holmes's declaration also identified three officers (other than Causey, Carter, or Planer) who were promoted to Senior Officer positions even though they either had a disciplinary record or performed pardon work.  Holmes argues that the fact that these other officers were promoted shows the Board's reasons lack credibility.  The Board, however, did not claim that a disciplinary record or pardon work is a bar to promotion, just that they influenced his supervisors' recommendations of him for the three relevant Senior Officer promotions.

Furthermore, evidence of comparators who are treated more favorably cannot show pretext unless those comparators are "similarly situated to the plaintiff in all relevant respects."  See Rioux, 520 F.3d at 1280 (quotation marks and alterations omitted).  Holmes offered no other information about his proffered comparators except that they had a disciplinary record or performed pardon work and thus did not show they were "similarly situated" to him in all relevant respects.  Accordingly, Holmes did not present evidence from which a reasonable jury could conclude that the Board's two proffered reasons were false and a pretext for discrimination.

Finally, Holmes's argument that the district court improperly shifted the burden of proof to him at summary judgment lacks merit.  Consistent with Federal

17

Rule of Civil Procedure 56(c)(1), the Board both cited to record evidence showing the presence of some undisputed facts and also pointed out that Holmes's own evidence was insufficient to carry his ultimate burden to prove by a preponderance of the evidence that the failure to promote him to the three Senior Officer positions was discriminatory.  See Fed. R. Civ. P. 56(c)(1)(A)-(B) & advisory committee's notes (2010 Amendments, Subdivision (c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 2552 (1986) (explaining that the moving party need not affirmatively negate the opponent's claim with affidavits or other materials, but instead may meet its summary judgment burden by showing there is a lack of evidence to support the essential elements the non-moving party must prove at trial); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (explaining that, per Celotex, "under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden").

## III.  DISTRICT MANAGER PROMOTION

### A.    Exhaustion of Administrative Remedies

Holmes claimed that the Board denied him the September 2011 District Manager promotion—the one awarded to Chambers—based on race.  The district

court concluded that Holmes had failed to exhaust this race-based failure-to-promote claim in the EEOC.  We agree.

Before a plaintiff may file a Title VII action, he must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). While we must liberally construe an EEOC charge that was prepared without assistance of counsel, a plaintiff's civil complaint remains "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Id. at 1280 (quotation marks omitted).  We have cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint.  Id. at 1279-80.

Here, Holmes's raced-based District Manager claim did not fall within the scope of his EEOC charge for two reasons.  First, this claim alleged a discrete act of discrimination—a promotion—that occurred after Holmes filed his EEOC charge.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002) ("Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'"); Gregory, 355 F.3d at 1279 (stating that it is inappropriate to allege new acts of discrimination).  Specifically, Holmes filed his charge on August 9, 2011, but Chambers' promotion did not occur until one month later, on September 13, 2011.

19

Second, Holmes's communications with the EEOC emphasized only age discrimination with regard to District Manager promotions, and not race discrimination. For example, in the two pre-charge letters Holmes sent to the EEOC, he advised, inter alia, that he had recently interviewed for two District Manager positions, but that two white males who were younger and had less experience had been selected for these positions.  Holmes stated that "therefore, I am making another claim of age discrimination."

In his formal EEOC charge, Holmes checked the boxes for discrimination based on race, color, sex, and age, but he claimed African-American candidates were selected over him only with respect to the Senior Officer position.  As to the District Manager position, Holmes's charge stated, "I was also denied a promotion to the position of district manager and a less experienced, less educated, younger officer was promoted."

Later, in a September 8, 2011 post-charge letter, Holmes again discussed the District Manager promotions, stating that since July 2011, he was passed over four times, and that "[a]t least two of these recent promotions to District Manager were to less educated, less experienced, and younger candidates than me ."  With respect to Roderick Chambers's promotion in particular, Holmes stated that Chambers "happens to be black," but also claimed Chambers was "less educated, less experienced, and younger than me."  Holmes asserted that "in the absence of clear

20

definitive promotional policy, my employer promotes those younger, less educated, and less experienced than myself." Holmes further pointed out that Chambers's promotion to District Manager discriminated against both him and an African-American female officer in her fifties, signifying that age, not race, was the alleged discriminatory motive in the decision.

Given that Holmes's own communications with the EEOC stressed age, not race, discrimination in the District Manager promotions, we cannot say a race discrimination claim could reasonably be expected to arise from his complaints about the District Manager promotions. Accordingly, the district court correctly concluded that any race discrimination claim as to the District Manager position was outside the scope of Holmes's EEOC charge and properly declined to consider such a claim.

**B.    Prima Facie Case**

However, even assuming arguendo that Holmes's passing reference to Chambers's race in his September 8, 2011 letter exhausted Holmes's race discrimination claim, the district court still properly granted summary judgment on this claim because Holmes did not present evidence that he was "qualified for" the District Manager position Chambers received. To establish a prima facie claim of failure to promote, the plaintiff must present evidence that he "applied for and was qualified for" the promotion. Brown, 597 F.3d at 1174. An employee is "qualified

21

for" a promotion if the employee "offers evidence that [he] satisfied an employer's objective qualifications." Kidd, 731 F.3d at 1204 (quotation marks omitted).

In Holmes's case, it is undisputed that to be eligible for promotion to an open District Manager position, a probation and parole officer must take the District Manager test and appear on the State Personnel Board's promotional register, or "certificate of eligibles." In his deposition, Holmes admitted he took the District Manager test only once, but he could not remember when he did so. Holmes submitted a printout from the State Personnel Board's website indicating that he was on a "current" District Manager promotional register on August 18, 2010. The decision to promote Chambers, however, did not occur until September 2011, one year later. And, District Manager promotional registers are closed rather than continuous, meaning they do not remain open to fill later vacancies. Therefore, Holmes did not present evidence that he was listed on the particular promotional register used to fill, and thus was eligible for, the District Manager position that Chambers received.

For all these reasons, we affirm the district court's entry of summary judgment in favor of the Board on Holmes's failure to promote claims.

**AFFIRMED.**

22