[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14050
_____

D. C. Docket No. 2:09-cv-1458-SLB


LARA W. SWINDLE,

Plaintiff - Appellant,

versus

JEFFERSON COUNTY COMMISSION, et al.,

Defendants,

MIKE HALE, in his official capacity,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 26, 2014)

Before HULL, MARCUS and DUBINA, Circuit Judges.

PER CURIAM:

Lara Swindle appeals the district court's grant of summary judgment to Jefferson County Sheriff Mike Hale, who was sued in his official capacity, on her Title VII claims. After carefully reviewing the record and the parties' briefs, we affirm.

## I.

In May 2006, Swindle went to work for the Jefferson County Sheriff's Office (JCSO) as a Laborer III, an at-will employee, assigned to the "weight crew" in the JCSO's Bessemer division.[1] She worked in that position until October 2009, when the weight crew was put on administrative leave in the wake of the county's financial problems. She resigned in February 2010, while on administrative leave.

David Newton was Swindle's immediate supervisor from the day she was hired until March 26, 2008. That day, she filed a personnel complaint with the JCSO alleging that Newton and David Stone, who was not her supervisor but had the authority to assign her work,[2] had been sexually harassing her for nearly two years. Newton's harassment allegedly consisted of

---

[1] The Laborer III position required the ability to perform heavy manual labor. Swindle's duties included checking and weighing trucks to ensure that they were not overweight and assisting deputies on traffic stops.

[2] After the district court granted summary judgment to Sheriff Hale but before the parties' filed their briefs in this appeal, the Supreme Court narrowed the meaning of "'supervisor' for purposes of vicarious liability under Title VII" to an employee who "is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, --- U.S. ----, ----, 133 S. Ct. 2434, 2454 (2013).

Even so, and without citing *Vance*, Swindle continues to argue on appeal that Stone was her supervisor and thus Sheriff Hale is vicariously liable for his sexual harassment. While *Vance* casts doubt on the correctness of this conclusion, we need not resolve this doubt here. Instead, we assume that Swindle's characterization of Newton and Stone as "supervisors" is correct.

(1) responding to her requests for vacation by telling her several times that he would have to "spank . . . [her] little naked ass"; (2) by grabbing her breast on one occasion; (3) by indicating on several occasions that he wanted her to unbutton her shirt; and (4) by standing behind her and pressing his genitals into her backside on more than one occasion.

Doc. 59 at 6–7 (alteration in original).  Stone's alleged harassment consisted of

(1) asking her to unbutton her shirt on several occasions; (2) putting her hand on his erect penis and saying:  "You made this happen, now you need to take care of it"; and (3) reaching for a cell phone that was between her legs and touching her thigh in the process.

*Id.* at 10.  Following the JCSO's investigation, Stone was terminated on June 6, 2008; Newton was terminated on July 8, 2008.[3]

On August 21, 2008, Swindle filed a Title VII charge of discrimination with the Equal Employment Opportunity Commission, which she amended two months later.[4]  After the EEOC issued a right-to-sue letter, Swindle brought this Title VII

---

[3] Newton appealed his termination to the county personnel board.  A settlement was reached; he agreed to 60 days' suspension without pay followed by an additional three-and-a-half months' administrative leave without pay.  Stone also appealed to the personnel board.  The board adopted the hearing officer's recommendation and reduced his discipline to 45 days' suspension without pay.  On return to the JCSO, Newton and Stone were re-assigned to the Bessemer jail.  Neither became Swindle's supervisor.

[4] As amended, Swindle alleged the following:

My sex is female.  I began my employment with the above named employer on May 22, 2006, as a Laborer III.  Since I began my employment I have been sexually harassed by two Deputies, one Deputy was my Supervisor at the time.  On March 26, 2008, I filed sexual harassment claims with the employer against two deputies I work with.  My immediate Supervisor, at the time, was one of the offenders.  After my complaint, I was retaliated against, in the following respect:  by being told I would have to transfer, by having other employees being told of my complaint, by being required to take a polygraph test to prove that my allegations were true, by being required to ride to a job in a patrol unit that has a cage, by being required to perform alone, duties that

3

action against Sheriff Hale. Swindle alleged that Newton and Stone's conduct constituted sex discrimination and created a hostile work environment, and that she was retaliated against for filing the March 26 personnel complaint against them.

The district court granted summary judgment to Sheriff Hale on Swindle's Title VII claims. The court concluded that her sexual-harassment claim failed because Sheriff Hale established the *Faragher–Ellerth* affirmative defense.[5] As for her retaliation claim, the court made two rulings. First, some acts of alleged retaliation had not been administratively exhausted because they were outside of the scope of the EEOC investigation that could reasonably be expected to flow from her Title VII charge. Second, the remaining acts of alleged retaliation—regardless of whether they were "considered alone or collectively"—did not constitute a materially adverse action because they would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Doc. 59 at 47. Swindle's retaliation claim thus failed, the court concluded, because she could not establish a prima facie case of retaliation.

This appeal followed.

---

required more than one person to perform, and by being issued a written warning for allegedly having my feet in my fiancée's lap.
    I believe I have been discriminated against because of my sex, and in retaliation for complaining of unlawful discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 38-27 at 2.

[5] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292–93 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

4

## II.

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court and drawing all factual inferences in favor of the nonmoving party. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 322, 106 S. Ct. 2548, 2552 (1986). To survive a motion for summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## III.

On appeal, Swindle contends that the district court committed three errors in granting summary judgment to Sheriff Hale.

First, the court inaccurately concluded that Sheriff Hale established the *Faragher–Ellerth* affirmative defense and incorrectly restricted the scope of her sexual-harassment claim.

Second, the court wrongly concluded that certain allegedly discriminatory or retaliatory acts were not administratively exhausted.

Third, the court erroneously found that she did not suffer any adverse employment action and thus failed to establish a prima facie case of retaliation.

5

We examine each alleged error in turn.

## A.

### 1.

Title VII protects an employee from having to endure a hostile work environment that is the product of unlawful harassment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). "Sexual harassment is a form of sex discrimination prohibited by Title VII." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006).

To establish a prima facie case of a sexually hostile work environment, the plaintiff must show that (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of her employment; and (5) a basis exists for holding her employer liable either directly or vicariously. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Here, like the district court, we assume that Newton and Stone's conduct constituted sexual harassment.

An employer is vicariously liable to an employee for a hostile work environment created by a supervisor. *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2292–93. But where, as here, the employee suffers no adverse employment action, the employer may assert the *Faragher–Ellerth* affirmative defense. To succeed, the employer must show that (1) it exercised reasonable care to prevent and

6

promptly correct harassing behavior, and (2) the employee unreasonably failed to take advantage of the employer's preventative and corrective opportunities or to otherwise avoid harm. *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270.

For the first prong of the *Faragher–Ellerth* defense, a formal anti-harassment policy is some proof that the employer exercised reasonable care to prevent harassing behavior. *See Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293 (stating that a formal policy is "not necessary in every instance as a matter of law"). But it "does not automatically satisfy [the employer's] burden." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314 (11th Cir. 2001). As for whether an employer exercised reasonable care to promptly correct sexual harassment, the employer "need not act instantaneously, but must act in a reasonably prompt manner to respond to the employee's complaint," once the employer has proper notice of it. *Id.*

For the second prong of the *Faragher–Ellerth* defense, "an employer's showing that the plaintiff-employee failed to follow its complaint procedures will often be sufficient [to] satisfy its burden." *Id.* "An employee must comply with the reporting rules and procedures her employer has established." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1306 (11th Cir. 2007). Even so, in some cases the employee's noncompliance may be reasonable—such as where the employee did not receive the policy or was wrongfully told not to pursue her complaint—and in such cases the employer cannot satisfy the second prong of the *Faragher–Ellerth* defense. *Frederick*, 246 F.3d at 1314, 1316.

7

In addition to any prompt reporting duties under an employer's policy, an employee has a "prompt reporting duty under the prophylactic rules the Supreme Court built into Title VII" in *Faragher* and *Ellerth*. *Baldwin*, 480 F.3d at 1306. Indeed, we have held that an employee who first complained about two allegedly discriminatory incidents more than three months after they occurred waited too long. *Id.* at 1307; *see also Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1289–90 (11th Cir. 2003) (concluding that a reporting delay of two-and-a-half months was too long); *cf. Ellerth*, 524 U.S. at 764, 118 S. Ct. at 2270 (explaining that the prompt reporting requirement encourages employees to report harassment "before it becomes severe or pervasive").

Here, Sheriff Hale established the *Faragher–Ellerth* defense. As to the first prong, Sheriff Hale showed that he exercised reasonable care to prevent harassing behavior. The JCSO has a formal sexual-harassment policy, and there is no dispute about what the policy's reporting requirements actually were. Nor is there a genuine dispute over whether the policy was both reasonable and effectively published. *See Baldwin*, 480 F.3d at 1303. The policy defined *sexual harassment* and set out the reporting requirements, including that an employee being harassed by her supervisor could report the harassment to her supervisor's supervisor, the county attorney, or an employee-relations officer. *Cf. Faragher*, 524 U.S. at 808, 118 S. Ct. at 2293. Swindle stated several times that she had received the JCSO policy-and-procedure manual and the sexual-harassment policy and that she had discussed these documents at an employee orientation.

8

Sheriff Hale also showed that he exercised reasonable care to promptly correct harassing behavior. When Swindle reported that she was being sexually harassed, Newton was placed on administrative leave that same day, and Stone was placed on administrative leave two weeks later. An investigation was immediately launched. And after investigators performed multiple polygraphs and interviews and issued numerous reports, Newton and Stone were terminated. *See Baldwin*, 480 F.3d at 1304–05. The evidence also showed that JCSO supervisors responded to Swindle's post-complaint allegations of discrimination through their deputies. The district court thus properly determined that Sheriff Hale satisfied the first prong of the *Faragher–Ellerth* defense.

As to the second prong, Sheriff Hale showed that Swindle unreasonably failed to timely report the harassment and no extenuating circumstances excuse her noncompliance. Swindle asserted that the harassment began in June 2006, not long after she was hired. Her first complaint, however, was not made until almost two years later. This was not prompt. *See id.* at 1307. As for why she waited, Swindle said that she thought conditions would improve, thought complaining would cost her the job, and found Newton intimidating. But a fear of being fired is not an extenuating circumstance. *See id.* Neither is Swindle's contention that she reasonably felt that reporting to her immediate supervisor was pointless, especially given her knowledge of the JCSO's sexual-harassment policy, her inconsistent statements about whether she knew that she could complain without going through Newton, and her ultimate decision to report to Newton's supervisor. *See id.* In short, Swindle has not shown that her noncompliance with the reporting

9

requirements was reasonable and thus should be excused.  Accordingly, the district court properly determined that Sheriff Hale satisfied the second prong of the *Faragher–Ellerth* defense.

In sum, because Sheriff Hale established both prongs of the *Faragher–Ellerth* defense, we conclude that the district court properly granted summary judgment in his favor on Swindle's Title VII sexual-harassment claim related to Newton and Stone's conduct.

## 2.

Before filing a civil action, a Title VII plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  For Alabama employees, this charge must be filed within 180 days of the alleged unlawful employment activity.  *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005).  The 180-day limit for filing an EEOC charge precludes a plaintiff from recovering for discrete acts of discrimination or retaliation that occurred outside of that period.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S. Ct. 2061, 2077 (2002).  A charge alleging a hostile work environment, however, is not time-barred so long as all acts alleged were part of the same unlawful employment practice and at least one act fell within the statutory period.  *Id.*

Here, Swindle's sex-discrimination claim was timely for summary-judgment purposes.  This is because viewing the facts and all inferences therefrom in her favor, one incident of sexual harassment could have occurred within 180 days of

10

her first EEOC charge. *See Brooks*, 446 F.3d 1162. Thus, contrary to Sheriff Hale's contention, the district court did not err by considering this claim.

But this does not mean that every unlawful incident referenced in Swindle's amended EEOC charge, pleaded in her judicial complaint, or mentioned in her brief in opposition to summary judgment contributed to her sexually hostile work environment. The sexual harassment of Newton and Stone, which led to the March 26 personnel complaint, and the post-complaint incidents are different in kind: Swindle's sex did not motivate the post-complaint incidents. Nor does she suggest otherwise. Indeed, she twice painted these incidents as retaliation rather than sexual harassment: first, in her amended EEOC charge, and later in her judicial complaint. We thus discern no error with the district court's finding that the post-complaint incidents were distinct from her sex-discrimination claim.

**B.**

An employee who has exhausted her administrative remedies may pursue a civil action within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The judicial complaint, however, is limited to the scope of the investigation that could reasonably have been expected to flow from the EEOC charge. *Gregory*, 355 F.3d at 1280. And we have cautioned that the EEOC charge should not be strictly construed. *Id.* Thus, the plaintiff may pursue a judicial claim so long as it "serve[s] to amplify, clarify, or more clearly focus earlier EEO[C] complaints." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quoting *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)). But "allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d 1277 at 1279–80.

11

Here, the question is whether Swindle administratively exhausted her sex-discrimination claim insofar as it relies on incidents that occurred after her March 26 personnel complaint. The district court concluded that she did not. We agree.

A sex-discrimination claim based on the post-complaint incidents that Swindle identifies could not reasonably be expected to flow from her amended EEOC charge. *See Gregory*, 355 F.3d at 1280. Treating these incidents as sex discrimination does not serve only to amplify, clarify, or focus her charge of retaliation—the label that she gave these incidents in her amended EEOC charge and judicial complaint—rather, she is trying to use them to support a separate theory of discrimination. This she cannot do. *See id.* at 1279; *Wu*, 863 F.2d at 1547. Thus, we conclude that the district court did not err in concluding that she failed to administratively exhaust her sex-discrimination claim to the extent that it relied on post-complaint incidents.

But even if a sex-discrimination claim could reasonably be expected to flow from Swindle's amended EEOC charge,[6] the post-complaint incidents were allegedly motivated by retaliation rather than sex. So the district court could not have concluded that they were part of her sexual-harassment claim. For these reasons, the district court's grant of summary judgment on this claim will be

---

[6] Swindle contends that she indicated ongoing sexual harassment by checking the boxes for "SEX" and "CONTINUING ACTION" on her amended EEOC charge. She also checked the box for "RETALIATION," which along with "SEX" (and other forms of unlawful discrimination) appear in a section separate from "CONTINUING ACTION"; thus, her message was at best ambiguous.

12

affirmed. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (explaining that we may affirm on any grounds supported by the record).

## C.

Title VII forbids an employer from retaliating against an employee who "has opposed any practice made an unlawful employment practice by Title VII." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (internal brackets omitted) (quoting 42 U.S.C. § 2000e-3(a)). Title VII's anti-retaliation provision "protects an individual not from all retaliation but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67, 126 S. Ct. at 2414. To establish a prima facie case of retaliation, the plaintiff must adduce evidence of (1) statutorily protected activity, (2) a materially adverse action, and (3) a causal connection between the protected activity and the materially adverse action. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013).

An employment action is "adverse" only if it results in some tangible, negative effect on the plaintiff's employment. *Lucas*, 257 F. 3d at 1261; *see Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1181–83 (11th Cir. 2003) (requiring a "material" adverse action). Negative performance evaluations, standing alone, do not constitute adverse employment actions. *See Lucas*, 257 F.3d at 1261 (evaluating a retaliation claim under the Americans with Disabilities Act).

In retaliation cases, a challenged action is deemed materially adverse when the plaintiff shows that the alleged retaliatory conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68, 126 S. Ct. at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d

13

1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted)). "We refer to the reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective." *Id.* "Normally petty slights, minor annoyances, and simple lack of good manners" are not likely to deter a victim of discrimination from complaining to the EEOC and thus do not constitute retaliation. *See id.*

According to Swindle, after her March 26 personnel complaint against Newton and Stone, she was the victim of retaliatory conduct. In her view, the following incidents are evidence of unlawful retaliation:

(1)    being told shortly after her personnel complaint that she would be reassigned to a different work location, which never occurred because the officer making the decision changed his mind;

(2)    having the content of her sexual-harassment complaint become known after the investigation was transferred from internal affairs to the Bessemer division, even though she had previously announced in front of her weight crew and several supervisors that Newton had sexually harassed her;

(3)    being denied transportation to a work location by her interim supervisor, an action for which he later apologized;

(4)    having to move, on one occasion, four weight scales where ordinarily she had to move only one;

(5)    receiving a ride to a work location in a patrol car with a cage, like everyone else on her weight crew, rather than the truck that was normally used;

(6)    receiving a performance counseling for alleged misconduct involving her fiancée, which was not placed in her personnel file;

14

(7)     being required to take a polygraph about the alleged misconduct involving her fiancée, the results of which were not placed in her personnel file;

(8)     being denied medical care and paid leave after she suffered a "panic attack" when a supervisor berated her for inviting someone into his office without approval, even though she was treated at a local hospital and took sick days to cover the time she missed;

(9)     Sheriff Hale's failure to respond to her grievance that she was disciplined for the incident involving her fiancée without a formal complaint having first been filed, even though she was not disciplined but rather received a performance counseling that was not placed in her personnel file;

(10)    not being called to testify at Stone's personnel-board hearing, thereby permitting him to present only his side of story, which in turn permitted the hearing officer to conclude that there was insufficient evidence of sexual harassment and thus to recommend that Stone be reinstated and his discipline be reduced to 45 days' suspension without pay—findings of fact and recommendations that were adopted by the board and not appealed by the JCSO; and

(11)    having to see Newton and Stone at the Bessemer jail after they served their suspensions, even though they neither had supervisory authority over her nor spoke or interacted with her.[7]

Swindle thus concludes that the district court erred in granting summary judgment to Sheriff Hale on her retaliation claim.

We cannot agree.  Swindle failed to establish a prima facie case of retaliation because each post-complaint incident, whether administratively

---

[7] In alleging retaliation in her judicial complaint, Swindle did not include all of these incidents.  Specifically, she omitted:  (3), (8), (9), (10), and (11).

15

exhausted or not,[8] neither had a tangible, negative effect on her employment nor would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *See Lucas*, 257 F.3d at 1261; *see also White*, 548 U.S. at 68, 126 S. Ct. at 2415.  Therefore, we conclude that her retaliation claim fails.

We also recognize a cause of action for retaliatory harassment, what we call a "retaliatory hostile work environment claim."  *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam).  On appeal, Swindle contends that these post-complaint incidents were part of a pattern of harassment that constituted retaliation under *White*.  To reach this conclusion, she considers these allegedly retaliatory acts cumulatively and then applies *White*'s materially adverse action standard.  As for how this approach is consistent with our precedent, she never says.[9]  In any

---

[8] The district court concluded that each post-complaint incident constituted a discrete act of retaliation—separate claims of retaliation.  As a result, Swindle had to not only administratively exhaust each claim but also establish a prima facie case for each incident.  After examining Swindle's amended EEOC charge and judicial complaint, the district court found that five incidents had not been administratively exhausted because they were not mentioned in nor reasonably expected to fall within the scope of the EEOC's investigation.  The five claims were: (1), (3), (8), (9), and (11).  The district court thus dismissed these claims on that ground.  Because we may affirm for any reason supported by the record, we need not consider whether the district court's conclusion was correct.  *See Lucas*, 257 F.3d at 1256.

[9] Swindle appears to rest her argument on the Sixth Circuit's decision in *Hawkins v. Anheuser-Busch, Inc.*, which held:

> Taking into account our caselaw and the guidance provided by *Burlington Northern*, we hold that an employer will be liable for the coworker's actions if (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances.

16

event, even if Swindle had alleged that a cause of action for retaliatory harassment and these acts of alleged retaliation were considered cumulatively, her claim fails.

To begin, our precedent requires a plaintiff claiming retaliatory harassment to show that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment or create an abusive working environment." *Gowski*, 682 F.3d at 1311 (quoting *Harris*, 510 U.S. at 21, 114 S. Ct. at 370) (internal quotation marks omitted). That is, to establish a prima facie case of retaliatory harassment, the allegedly adverse actions must meet *Harris*'s rather than *White*'s standard. *See id.* As a result, retaliatory harassment and the other types of unlawful harassment have the same standard. *Cf. Miller*, 277 F.3d at 1275 (setting forth standard for Title VII national-origin hostile-work-environment claim).[10]

We are bound by *Gowski*. *See United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong."). Based on our

517 F.3d 321, 347 (6th Cir. 2008).

[10] Put another way, a plaintiff establishes a prima facie case of retaliatory harassment only if she shows that (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a "but for" cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of her employment; and (5) a basis exists for holding her employer liable either directly or vicariously. *See Gowski*, 682 F.3d at 1311–12; *Miller*, 277 F.3d at 1275; *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ----, -----, 133 S. Ct. 2517, 2533 (2013) (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which means "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").

17

review of the record, we conclude that the post-complaint incidents do not come close to establishing a prima facie case of retaliatory harassment under *Harris*'s standard.  Nor does Swindle argue otherwise.  Thus, the district court's grant of summary judgment on Swindle's retaliation claim will be affirmed.

## IV.

Having carefully considered the record in this case, we find no reason to disturb the district court's grant of summary judgment.  That judgment is, accordingly,

AFFIRMED.

18