[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 7, 2004
THOMAS K. KAHN
CLERK

No. 03-10241

_____

D. C. Docket No. 01-00050-CV-CDL-6

GLADYS GREGORY,

Plaintiff-Appellee,

versus

GEORGIA DEPARTMENT OF HUMAN RESOURCES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(January 7, 2004)**

Before ANDERSON, BARKETT and RONEY, Circuit Judges.

PER CURIAM:

The controlling issue in this Title VII race-based discrimination appeal is

whether summary judgment should have been entered for the defendant employer on

plaintiff's retaliation claim on the ground that the claim was administratively barred because it was not specifically articulated in plaintiff's charge previously filed with the Equal Employment Opportunity Commission (EEOC). We affirm both the denial of summary judgment for defendant and subsequent jury verdict in favor of plaintiff.

The proceedings relevant to this appeal are as follows. Plaintiff Dr. Gladys Gregory, an African-American doctor who was hired and then terminated as a staff psychiatrist at Southwestern State Hospital owned and operated by the Georgia Department of Human Resources (DHR), filed this complaint against DHR alleging, *inter alia*, retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1] After a jury trial resulting in a verdict on the retaliation claim for Dr. Gregory, the district court entered judgment in the amount of $10,000 against DHR.

Prior to the jury trial, DHR, relying on *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), had filed a motion for summary judgment arguing that Dr. Gregory's retaliation claim should be considered administratively barred because she had not alleged in her EEOC discrimination charge that she had been retaliated

---

[1] Plaintiff initially included a 42 U.S.C. § 1981 claim, which she abandoned prior to trial. In that claim, she named defendants Southwestern State Hospital and Dr. Ken Fuller, M.D., her supervisor, as defendants. They both received summary judgment in their favor prior to trial, leaving only the retaliation claim for trial. They are not part of this appeal.

against. The district court denied the motion for summary judgment, finding that although Dr. Gregory had alleged only race and gender discrimination and had not claimed retaliation explicitly in her EEOC charge, the exhaustion requirement was nonetheless satisfied because the retaliation claim was based on the facts alleged in her discrimination charge. The court determined that a reasonable investigation by the EEOC would have determined that Dr. Gregory (1) had complained about the discriminatory conduct to her supervisor, and (2) was terminated shortly thereafter. The district court thus found that Dr. Gregory's retaliation claim was not administratively barred, and that summary judgment was not otherwise appropriate because genuine issues of material fact existed regarding Dr. Gregory's retaliation claim.

In the EEOC charge of discrimination filed *without the aid of counsel*, Dr. Gregory alleged that she was terminated by DHR for "no legitimate reason." In that charge, Dr. Gregory: (1) only marked the spaces for gender and race discrimination in the "charge of discrimination" portion of the template form, leaving the "retaliation" space blank; (2) indicated that she was hired as a physician/psychiatrist on July 15, 1999, and terminated on February 15, 2000; (3) asserted that she was not given a "legitimate" reason for her termination; and (4) contended that she "believe[d]" that she was discriminated against, as she had been an exemplary

employee. Moreover, she asserted that white and male doctors (1) were not required to provide doctor's excuses when they used sick leave, (2) did not have negative performance memoranda placed in their records for arbitrary reasons, and (3) were not subjected to unwarranted termination. Dr. Gregory thus alleged, "I *believe* that I have been discriminated against on the basis of my race (Black American) and my sex (female)." (emphasis supplied). The EEOC subsequently issued a right to sue letter, resulting in the filing of this lawsuit. The lawsuit alleged, *inter alia*, "After Plaintiff complained to the administration of Defendant Fuller's racially discriminatory treatment of Plaintiff, Defendants treated Plaintiff worse and even ended up terminating Plaintiff's employment. Plaintiff's termination was motivated by her race and/or in retaliation for complaining of Defendant Fuller's race discrimination against her."

At trial, Dr. Gregory asserted that her termination was motivated by her race and was in retaliation for her complaints about Fuller's race discrimination. The trial record reveals that Dr. Gregory stated that, during her initial training period, Dr. Fuller reassigned more of his patients to her than he did to any non-African-American physicians and claimed that, as part of his regular discrimination against her, he (1) placed false and disparaging information about her in her personnel file, (2) assigned her a harder work schedule than non-African American physicians, and (3) required

4

her to bring a doctor's slip for missing work due to illness, which was not required of non-African American physicians. Evidence at trial also reveals that Dr. Fuller became angry that Dr. Gregory was "tallying" up the patients that each individual psychiatrist at the hospital had and, upon firing her, stated to other minority employees, "this is what happens when you mess with a privileged white male like me."

In order to prove retaliation under Title VII, a "plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). Prior to filing a Title VII action, however, a plaintiff first must file a charge of discrimination with the EEOC. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).

The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir. 1983); *see also Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through

5

the office of the EEOC.") (internal quotation and citation omitted). This Court further has noted that judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate. *Wu*, 863 F.2d at 1547 (citation omitted).

In light of the purpose of the EEOC exhaustion requirement, we have held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation and citation omitted); *Sanchez*, 431 F.2d at 466 (noting that the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge). Courts are nonetheless "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." *Sanchez*, 431 F.2d at 460-61. As such, this Court has noted that "'the scope of an EEOC complaint should not be strictly interpreted'" *Id.* at 465 (citation omitted).

The proper inquiry here therefore is whether Dr. Gregory's complaint was like or related to, or grew out of, the allegations contained in her EEOC charge. Dr. Gregory, without the aid of counsel, filed an EEOC charge *after* she was terminated.

6

The ultimate act that she complained about was that she was terminated. At the point at which she filed the charge, she "believe[d]" that she was terminated because of her race and sex. She set forth the relevant dates of discrimination in the charge, as well as the reasons why she believed she was terminated. Although not clear in the record, the EEOC presumably investigated, at least in some fashion, the possible reasons why Dr. Gregory was terminated, growing from her initial "belief" that it was because of her race and sex. Indeed, there could be various permutations of non-legitimate reasons why an employee is ultimately terminated. In Dr. Gregory's situation, for example, it could be that race and sex were the only reasons, as she initially believed, why she was terminated. It could also be, however, that Dr. Gregory was terminated *in retaliation for* having complained about Dr. Fuller's disparate treatment of her, *inter alia*, during physician scheduling and patient assignments. It could further be that she was terminated for actual legitimate reasons, which is not likely the case here because there is a $10,000 jury verdict in favor of Dr. Gregory suggesting otherwise.

After a careful *de novo* reading of Dr. Gregory's EEOC charge prepared without the assistance of counsel, and under the liberal EEOC charge strictures of *Sanchez*, we hold that the district court did not err in finding that Dr. Gregory's retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form. The facts alleged in her EEOC charge could have

7

reasonably been extended to encompass a claim for retaliation because they were inexplicably intertwined with her complaints of race and sex discrimination. That is, she stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation. *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 161-62 (5th Cir. 1971) (noting that employee filing an EEOC complaint without the assistance of counsel are to be construed liberally, and holding that EEOC charge complaining of discharge was "reasonably related" to Title VII complaint that "she was discharged").

AFFIRMED.