[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10214
Non-Argument Calendar

_____

D.C. Docket No. 0:10-cv-61498-JAL

MAGDA PIZZINI,

Plaintiff - Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF HOMELAND SECURITY,
PATRICIA WHITE,
DANIEL BABOR,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 8, 2012)

Before BARKETT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Magda Pizzini sued Janet Napolitano, in her capacity as Secretary for the

United States Department of Homeland Security (DHS), alleging a hostile work environment, retaliation, and race and national origin discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), 2000e-16. Pizzini is an Hispanic woman of Puerto Rican descent, who has been employed since 2003 in the Miami field office of the Federal Air Marshal Service, a component of DHS.[1] The district court granted summary judgment in favor of DHS on each of Pizzini's claims. Proceeding pro se, Pizzini argues here that the district court erred because DHS "failed to meet its burden on summary judgment and genuine issues of material fact exist for the jury to decide each claim."

We review a district court order granting summary judgment de novo. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). In assessing whether a genuine issue of material fact exists, we "must view all the evidence and

---

[1] The facts underlying Pizzini's claims are more completely set out in the Report and Recommendation of the Magistrate Judge. Pizzini v. Napolitano, No. 10-61498 (S.D. Fla. Nov. 1, 2011) (magistrate's report and recommendation).

2

all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." Id. (quotation marks omitted). Stated differently, "[a] genuine issue of material fact exists when a reasonable jury could return a verdict for the nonmoving party." Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1254 (11th Cir. 2012) (quotation marks omitted).

## I.  HOSTILE WORK ENVIRONMENT

To establish a hostile work environment claim under Title VII, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) that harassment was based on her membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is directly or vicariously liable for such environment. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012). The district court granted summary judgment to DHS on Pizzini's hostile work environment complaint because it determined that she "ha[d] not met the 'pervasive or severe' element of her . . . claim."

Pizzini takes exception to the district court's determination, arguing that it "ignores the totality of the circumstances and fails to examine the conduct in

3

context." In support, Pizzini alleges "unequal treatment when compared to . . .

non-Hispanic coworkers," and "repeated racially derogatory comments [made] by

virtually all of [her] coworkers [and] ignored and exacerbated by supervisors."

Finally, she draws our attention to the fact that she was involuntarily hospitalized

for two nights in August 2010, allegedly because of the "sever[ity]" and

"hostil[ity]" of her work environment.

Pizzini's argument in this regard fails. First, neither of the two cognizable

instances of "unequal treatment" alleged by Pizzini can reasonably support her

hostile work environment claim.[2] The first of these alleged instances—that a

supervisor demanded that she clean "trash" from government vehicles—is

contradicted by Pizzini's own deposition testimony, taken as part of her initial

complaint to the Equal Employment Opportunity Commission (EEOC). In that

deposition, Pizzini stated that her supervisor requested that she recover receipts

---

[2] On appeal, Pizzini also alleges that a supervisor "refused to assist [her] with her job duties." Pizzini has failed, however, to provide citations to the record regarding this allegation, or even to provide any indication as to which "job duties" she is referring. While we read briefs filed by pro se litigants liberally, Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008), we have also warned that failure to include citations to the parts of the record on which an appellant relies may result in waiver of those allegations for purposes of appeal. See Nat'l Alliance for the Mentally Ill v. Bd. of Cnty. Comm'rs, 376 F.3d 1292, 1295–96 (11th Cir. 2004) (citing Fed. R. App. P. 28(a)(9)(A)); cf. Doe v. Moore, 410 F.3d 1337, 1349 n.10 (11th Cir. 2005) ("On appeal, we require appellants to not only state their contentions to us, but also to give 'the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'") (quoting Fed. R. App. P. 28(a)(9)(a)). Thus, to the extent that we are not able to determine which incidents or job duties she is referring to here, this allegation is waived.

4

and other papers from government vehicles because these documents were necessary for Pizzini to properly perform her duties as DHS fleet custodian. In her deposition, she also made clear that her supervisor never asked her to pick up "trash." Pizzini's testimony is consistent with the supervisor's affidavit—submitted by Pizzini as part of her own motion for summary judgment. The supervisor explained that he instructed Pizzini to check the vehicles for this paperwork because it was "logical[]" and "efficien[t]" for her to do so, given her "responsibil[ity] for maintaining vehicle records." Considering the record as a whole, this allegation does not reasonably support her claim.

Neither does Pizzini's second alleged instance of unequal treatment reasonably support her hostile work environment claim. She asserts that a supervisor "refus[ed] to approve [her] leave requests until all non-Hispanic program assistants had submitted their leave requests." In support of this allegation Pizzini has provided three emails, sent by her supervisor to multiple employees in the Miami field office, in which the supervisor requests that all holiday leave requests be submitted by certain dates so that office-wide holiday leave calendars could be coordinated. However, nothing about these emails suggests that Pizzini was singled out for "unequal treatment." Indeed it appears that each of her holiday leave requests were granted within fifteen days of

5

submission, and no less than six weeks prior to the requested time off.  Thus, based on our de novo review of the record before us, this allegation also does not reasonably support Pizzini's claim.[3]

Neither are we persuaded that the "racially derogatory comments" alleged by Pizzini are sufficient to satisfy the "severe or pervasive" prong of the hostile work environment test.  The first of these comments—that Hispanics "don't understand others when spoken to"—appears to be taken out of context.  The record does not reflect that DHS or its employees ever stated that Hispanics "don't understand others when spoken to."  Instead it indicates that one of Pizzini's supervisors told Pizzini that Pizzini "never understands people when they talk to her."  Pizzini attributes this statement to racial animus but has provided no

---

[3] Relying on Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279–80 (11th Cir. 2004), the district court determined that Pizzini's allegation regarding leave requests was beyond the scope of its review because Pizzini failed to raise it in her complaint to the EEOC.  This reliance was misplaced.  In Gregory, we held that the district court properly allowed a retaliation claim to proceed, even where the complainant failed to allege retaliation in her initial complaint to the EEOC, because "[t]he facts alleged in her EEOC charge [of race and gender discrimination] could have reasonably been extended to encompass a claim for retaliation." Id. at 1280.  We made clear in Gregory that "[t]he proper inquiry . . . is whether [the complaint to the district court] was like or related to, or grew out of, the allegations contained in [the] EEOC charge." Id.; see also Wu v. Thomas, 863 F.2d 1543 (11th Cir. 1989) ("As long as allegations in the judicial complaint and proof are reasonably related to charges in the administrative filing and no material differences between them exist, the court will entertain them. . . . Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate.") (quotation marks omitted).  Thus, insofar as this allegation was "reasonably related" to Pizzini's EEOC charge, and "served to amplify, clarify, [and] more clearly focus [her] earlier EEO complaint[]," it should have been considered by the district court.  Nonetheless, as we explained above, this allegation cannot reasonably support Pizzini's hostile work environment claim.

6

independent evidence to support that claim. At the same time, Pizzini concedes that this statement occurred in a closed-door meeting between herself and a supervisor, during which Pizzini accused the supervisor of failing to follow through on an alleged agreement to change the content of Pizzini's performance review. In context, it appears that this statement had nothing to do with Pizzini's race; rather it related to a miscommunication with the supervisor.

The only remaining "comment[]" before us on appeal—specifically, that "Puerto Ricans will never be promoted in the Miami Field Office because they don't know how to speak or write English"—cannot independently satisfy the "severe or pervasive" prong.[4] Our law is clear that to be actionable, a hostile work environment must be both objectively and subjectively offensive. Jones, 683 F.3d at 1299. In evaluating the objective severity of the harassment, we consider: (1) the frequency of the conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a "mere offensive utterance"; and (4) whether it unreasonably interfered with the employee's work performance. Id. Pizzini admits that she was not present for this statement and does not know when it was

---

[4] In her brief, Pizzini also alleges additional "racially derogatory comments," specifically statements that Hispanics "don't know any English," and "don't know how to write English." Again, however, Pizzini provided no citations to the record to support these allegations. Our independent endeavors to locate this evidence have failed. For this reason, these allegations are also waived for purposes of Pizzini's appeal. See Nat'l Alliance for the Mentally Ill, 376 F.3d at 1295–96.

7

made.  There is no indication that the statement occurred more than once, was accompanied by a physical threat or was humiliating, or that it unreasonably interfered with her work performance.  Under our precedent, an alleged one-time statement such as this is insufficient to sustain a hostile work environment claim against a motion for summary judgment.  See McCann v. Tillman, 526 F.3d 1370, 1378–79 (11th Cir. 2008) (affirming summary judgment on appellant's hostile work environment claim where alleged conduct included two demeaning comments made in appellant's presence, and two additional racial epithets spoken outside her presence, in a period of less than three years).

Finally, we cannot accept Pizzini's suggestion that her involuntary hospitalization independently establishes that her work environment was "hostile." First, as set out above, she has not demonstrated that the alleged conduct "was severe or pervasive enough to alter the terms and conditions of [her] employment." See Jones, 683 F.3d at 1292.  Second, her hospitalization was not, as Pizzini implies, directly the result of any alleged conduct within her work environment. Rather it was prompted by Pizzini's distress when the DHS Office of Inspector General (OIG) informed her that it would not be visiting the Miami field office and that she should "summarize and forward information" regarding her EEOC complaint to OIG for review.  Third, by Pizzini's own admission, she believed the

8

hospitalization was an overreaction.

In sum, a reasonable jury could not return a favorable verdict on Pizzini's hostile work environment claim because the alleged conduct was not sufficiently "severe or pervasive," Jones, 683 F.3d at 1292, even when viewed in the light most favorable to her. See Chapter 7 Trustee, 683 F.3d at 1254. Thus, the district court properly granted DHS's motion for summary judgment.

## II.  RETALIATION

A prima facie case of retaliation under Title VII requires the plaintiff to show that: "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Chapter 7 Trustee, 683 F.3d at 1258 (quotation marks omitted); see also 42 U.S.C. § 2000e-3(a).  The district court determined that DHS was entitled to summary judgment on Pizzini's retaliation claim "because Pizzini [could not] show that she suffered an adverse employment action after the filing of her EEO complaint," a statutorily protected activity.

Pizzini argues that the district court erred in its determination that she did not suffer a materially adverse action following her complaint to the EEOC. Specifically Pizzini asserts that after she filed her EEOC Complaint, she was denied a salary increase, reassigned positions from fleet custodian to property

9

custodian, and received a negative performance appraisal.  Based on our de novo review of the record, however, Pizzini's argument does not carry the day.  First, as noted by the district court, Pizzini filed her EEOC complaint after she learned from her supervisor that she would not receive a pay increase.  Thus, Pizzini did not engage in "statutorily protected activity" until after the alleged  "materially adverse action."  Chapter 7 Trustee, 683 F.3d at 1258.  Pizzini's failure to receive a pay increase therefore does not constitute a materially adverse action for purposes of her retaliation claim.

Neither does Pizzini's reassignment from fleet custodian to property custodian constitute a materially adverse action.  Again, Pizzini filed her EEOC complaint only after learning of her reassignment.  Also, Pizzini has pointed to no evidence that her new position is "more arduous and dirtier" than her previous position, or even that her former position "was objectively considered a better job."  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71, 126 S. Ct. 2405, 2417 (2006) (quotation marks omitted).  Thus, Pizzini's reassignment cannot reasonably qualify as a materially adverse action for purposes of her retaliation claim.

Finally, the content of Pizzini's performance reviews is not sufficient to qualify as a materially adverse action.  The performance reviews were not adverse

10

because, as indicated by the district court, they are "overall positive." Beyond that, there is little qualitative difference, if any, between the substance of the reviews Pizzini received prior to filing her EEOC complaint and those she received after filing her complaint.

Neither individually nor collectively could these alleged instances sustain a favorable verdict on Pizzini's retaliation claim. See Akins v. Fulton Cnty, Ga., 420 F.3d 1293, 1301 (11th Cir. 2005). Thus, the district court properly granted summary judgment. See Chapter 7 Trustee, 683 F.3d at 1258–59.

## III.  DISCRIMINATION

Among other things, Title VII makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of [her] race, . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff establishes a prima facie case of discrimination by showing that: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). The district court entered summary judgment in favor of DHS on Pizzini's discrimination claim because "Pizzini [could not] show that she suffered an adverse employment

11

action as a result of her race or national origin."

Pizzini challenges the district court's determination by alleging "differential application of work rules" based on a supervisor's "refusal to approve [her] leave requests until all non-Hispanic program assistants had submitted their leave requests"; a supervisor's "refusal to assist [her] with her work duties"; and a supervisor's demand that she "perform duties not required of her non-Hispanic coworkers."

Pizzini's allegation about her leave requests cannot reasonably support her discrimination claim for the same reasons that it cannot reasonably support her hostile work environment claim. Her remaining allegations are waived because once again, and as we discussed above, Pizzini has not provided citations to the record, and she has not provided evidentiary support to show the "duties" of which she speaks. See Nat'l Alliance for the Mentally Ill, 376 F.3d at 1295–96; cf. Doe, 410 F.3d at 1349 n.10. Thus, because Pizzini has failed to make a prima facie allegation of an adverse employment action based on her race or national origin, her discrimination claim fails. See Crawford, 529 F.3d at 970–71.

## IV.

For these reasons, the district court's grant of summary judgment in favor of DHS is

12

**AFFIRMED.**