[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11922
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cv-00168-WFJ-SPF


PETER ORTIZ,

                                                                Plaintiff-Appellant,

versus

WASTE MANAGEMENT, INC. OF FLORIDA,
CARLOS GARCIA,

                                                                Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 27, 2020)


Before WILSON, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Peter Ortiz appeals the district court's dismissal of his civil action against his former employer, Waste Management, Inc. of Florida ("WMI").[1]  In his complaint, Plaintiff asserted against WMI claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and for violation of Florida law.[2]  No reversible error has been shown; we affirm.

Plaintiff alleged these facts in his complaint.  Plaintiff was employed as a Route Driver with WMI beginning in 2003.  On 23 January 2017, a group of Plaintiff's coworkers taunted Plaintiff after Plaintiff arrived at work wearing a small bandage on his face.  One of the coworkers -- Carlos Garcia -- used his cellphone to record a video of the taunting.  Plaintiff told Garcia to stop filming him.  Plaintiff then walked out of the breakroom and into the men's restroom.  As Plaintiff was sitting on the toilet, Plaintiff looked up and saw that Garcia was also in the restroom and was filming Plaintiff, whose genitalia was exposed.

---

[1] Plaintiff also named as a defendant his coworker, Carlos Garcia.  On appeal, Plaintiff raises no argument about his claims against Garcia; those claims are not before us on appeal.

[2] The district court dismissed without prejudice Plaintiff's state law claims after declining to exercise supplemental jurisdiction.  On appeal, Plaintiff raises no challenge to that ruling.

2

The next day, Plaintiff reported the incident to his supervisor, D.A. D.A., however, did nothing to address Garcia's conduct and, instead, continued to assign Plaintiff to work with Garcia after the filming incident.

On 26 January, Plaintiff learned that two other coworkers (who had not been present during the initial taunting episode) had seen the video of Plaintiff on the toilet. Plaintiff complained to D.A. a second time. D.A. then spoke with Plaintiff and Garcia about the situation. D.A. told Garcia to delete the video but did not otherwise reprimand Garcia or confirm that the video had been deleted. In addition, D.A. insisted on discussing the matter in a public area despite Plaintiff's request to move into a private office. Plaintiff later learned that D.A. and Garcia were "very good friends."

Over three weeks later, Plaintiff says he was contacted by a "whistleblower" who showed Plaintiff a copy of Garcia's video. Plaintiff learned that Garcia had sent the video directly to the whistleblower and to four other coworkers.

On 22 February, Plaintiff called WMI's "Integrity Hotline": a phone number for employees to report "unethical behavior" in the workplace. WMI opened an investigation into Plaintiff's complaint. The complaint was assigned to Y.B., a human resources manager.

After Y.B. began her investigation, she demanded to know the whistleblower's identity. Plaintiff gave Y.B. the names of the five coworkers who

had received the video directly from Garcia (one of whom was the whistleblower) but refused to identify the whistleblower.  Y.B. told Plaintiff that he was impeding the investigation and that he would not "like what comes next."  Plaintiff responded that he was "being harassed and retaliated against for precisely having integrity."

During a later conversation, Y.B. told Plaintiff that, because he refused to disclose the whistleblower's identity, "the case was out of her hands"; the investigation had been transferred to Corporate Security.  Y.B. also told Plaintiff that -- per WMI's lawyer -- Plaintiff would be fired if he failed to disclose the identity of the whistleblower within 48 hours.  Plaintiff refused to comply; WMI terminated Plaintiff's employment on 23 March 2017.

In his civil complaint, Plaintiff asserts two claims under Title VII: one for retaliation and another for hostile work environment.  About retaliation, Plaintiff asserts that WMI treated him differently because of his sex and retaliated against him for reporting Garcia's behavior and "for exercising his civil rights and demanding to be treated equal as his female counterparts."  Plaintiff contends that -- had he been a female employee -- WMI would have investigated the incident more thoroughly, would have taken remedial action against Garcia, would have assigned the investigation of Plaintiff's complaint (which involved video footage

of Plaintiff's genitalia) to an investigator of the same sex, and would not have terminated Plaintiff's employment.

About his second Title VII claim, Plaintiff says he was subjected to a hostile work environment because of his sex. Plaintiff says he was treated differently from female employees because WMI would have treated more seriously a similar incident involving a female employee.

WMI moved to dismiss Plaintiff's complaint. In pertinent part, WMI asserted that Plaintiff's allegations fell outside the scope of the operative charge of discrimination Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff -- through his lawyer -- filed with the EEOC the charge of discrimination pertinent to this appeal on 4 August 2017.[3] Plaintiff marked (on small spaces similar to tick-boxes that were part of the complaint form) that he was discriminated against based on "retaliation" and "other (specify below)." Identical small spaces existed to be checked for several other kinds of discrimination, including "SEX"; the "__ SEX" space was not checked by Plaintiff. Briefly stated, Plaintiff alleged that he "was retaliated against for constantly complaining about

_____

[3] Plaintiff filed two charges of discrimination with the EEOC. Plaintiff filed his first charge on 4 August 2017. Based on that charge, the EEOC issued Plaintiff a Notice of Right to Sue on 24 October 2018: that notice is attached to Plaintiff's complaint. Plaintiff later filed a second charge on 8 November 2018, which the EEOC dismissed as untimely. In the district court and on appeal, Plaintiff relies solely upon the 4 August 2017 EEOC charge and raises no argument that the district court erred in failing to consider Plaintiff's second EEOC charge.

5

having my rights and dignity violated by [Garcia]," and that Garcia had recorded and circulated a video of Plaintiff seated naked on the toilet.

In his "Discrimination Statement" (which extends over several pages), Plaintiff said he believed he had been harassed, subjected to a hostile work environment, and retaliated against in violation of Title VII.  Plaintiff then described in detail the same factual allegations about Garcia's conduct, WMI's investigation, and about the termination of Plaintiff's employment that Plaintiff alleged in his complaint.  Never did Plaintiff's EEOC charge allege that Plaintiff was treated differently or discriminated against because of his sex or allege that he had made it known to WMI that he believed he was being discriminated against based on his sex.

After conducting a hearing on WMI's motion, the district court dismissed with prejudice Plaintiff's Title VII claims.  The district court determined that the operative EEOC charge "simply said nothing about sex discrimination."  At the hearing on WMI's motion to dismiss, Plaintiff's lawyer conceded that Plaintiff alleged no sex discrimination in his first -- that is the pertinent -- EEOC charge. Determining that Plaintiff's Title VII claims fell outside the scope of the EEOC investigation that reasonably could be expected to grow out of the charge of discrimination, the district court concluded that those claims were subject to dismissal.

We review de novo a district court's dismissal for failure to state a claim, accepting all properly alleged facts as true and construing them in the light most favorable to the plaintiff.  Butler v. Sherriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012).

Title VII makes it unlawful for an employer to discriminate against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The phrase "terms, conditions, or privileges of employment" has been construed to include claims about "a discriminatorily hostile or abusive environment."  See Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244 (11th Cir. 2004).  We have stressed that Title VII "does not prohibit harassment alone, however severe and pervasive."  See Baldwin v. Blue Cross/Blue Shield, 480 F.3d 1287, 1301 (11th Cir. 2007).  "Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex."  Id. at 1301-02.  Discrimination is the heart of Title VII; not every unreasonable, uncivil, or mean-spirited act is covered.

Title VII also makes it unlawful for an employer to retaliate against an employee because of the employee's opposition to an employment practice, if that kind of practice is made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).  Although a plaintiff "need not prove the underlying claim of discrimination which

7

led to [his] protest," he must demonstrate that he "engaged in statutorily protected expression." Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). An employee's complaint -- formal or informal -- about an employment practice constitutes statutorily protected expression if the employee "explicitly or implicitly communicate[s] a belief that the practice constitutes unlawful employment discrimination." Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1311 (11th Cir. 2016).

Before filing a civil complaint alleging violations of Title VII, an employee must exhaust his administrative remedies by first filing a timely charge of discrimination with the EEOC. Stamper v. Duval Cty. Sch. Bd., 863 F.3d 1336, 1339 (11th Cir. 2017). The purpose of the exhaustion requirement is to allow the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004).

Given the importance of the exhaustion requirement, a plaintiff's civil complaint under Title VII "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 1280. In determining whether a complaint falls within the scope of the EEOC charge, we consider whether the complaint is "like or related to, or grew out of, the

8

allegations contained in [the] EEOC charge." Id. Judicial claims that merely "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint are permissible; but a judicial complaint may not assert "allegations of new acts of discrimination." Id. at 1279-80. We have also said that courts should avoid strict interpretation of the scope of the EEOC charge and avoid dismissing Title VII claims based merely on procedural technicalities. See id. at 1280.

On appeal, Plaintiff contends that the newly-added assertion in his civil complaint -- that Plaintiff was treated differently and less well because he was a male and not a female -- is permissible because that assertion merely "amplifies, clarifies, and more clearly focuses" the allegations in the EEOC charge. In a similar way, Plaintiff contends that an EEOC investigation of his allegations would have uncovered evidence of sex discrimination. We disagree.

Plaintiff's EEOC charge contained no factual allegations which could be construed reasonably as complaining about discrimination, harassment, or retaliation based on Plaintiff's sex. Plaintiff also alleged no facts showing that Plaintiff had engaged in statutorily protected expression. Although Plaintiff described in detail his complaints about Garcia's conduct and about the investigation to his supervisor, to the Integrity Hotline, and to Y.B., nothing evidenced that Plaintiff "explicitly or implicitly communicate[d]" to WMI that

9

Plaintiff believed he was being treated differently because of his sex. See Furcron, 843 F.3d at 1311.

Plaintiff's allegations in his civil complaint about sex discrimination constitute a claim in addition to and altering significantly the allegations in Plaintiff's EEOC charge. Given the complete lack of factual allegations about sex discrimination in the EEOC charge, we cannot conclude that an EEOC investigation would have reasonably uncovered evidence of sex discrimination. See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (concluding that a reasonable investigation based on plaintiff's EEOC charge -- which mentioned only discrimination and retaliation based on disability, not national origin -- would not have encompassed retaliation based on complaints about national origin discrimination).

The district court committed no error in concluding that Plaintiff's Title VII claims for retaliation and for hostile work environment based on sex discrimination fell outside the scope of Plaintiff's EEOC charge. Contrary to Plaintiff's assertion, the district court neither engaged in an unreasonably strict interpretation of the scope of Plaintiff's EEOC charge nor based its ruling on a mere procedural technicality, such as Plaintiff's failure to mark the "__ SEX" space on the EEOC charge form. Taking everything into account, Plaintiff's EEOC complaint omitted

10

altogether a claim based on sex discrimination.

AFFIRMED.