[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11106

Non-Argument Calendar

_____

COLLIS SUMBAK,

Plaintiff-Appellant,

*versus*

EATON CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-01286-MLB

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Collis Sumbak, a black male of Sudanese origin, appeals the district court's order granting summary judgment to his employer, Eaton Corporation, on his claims for race and national origin-based discrimination based on a failure to promote, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and 3; and 42 U.S.C. § 1981. After review, we affirm.

## I.    Background[1]

Eaton is a power management company that provides services across varied industries. Plaintiff, a current Eaton

---

[1] We rely on the factual findings in the magistrate judge's report and recommendation (R&R) adopted by the district court. In his counseled brief on appeal, Sumbak challenges those factual findings and the district court's application of Local Rule 56.1(B) to deem undisputed or improperly challenged facts asserted by the movant as admitted. Local Rule 56.1(B) provides that:

> A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The Court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal

employee, worked as a Production Technician at Eaton's San Francisco branch from 2000 to January 2012, when he transferred to its facility in Smyrna, Georgia. Plaintiff currently reports to Facilities Manager John Biggins and Production Manager Barrett Hachey.

Sumbak testified that in 2015, he told Biggins that his fellow employees would not help him lift heavy equipment. At the time, Sumbak complained that "[i]t looks like they—they don't want to work with me because I'm not from this place or what." He further explained to his boss that he was part of a tribe and had been tortured because of his tribal identity back in Sudan. Sumbak explained that when his fellow employees would not help him, "it make[s] me feel back—I'm back home again . . . It doesn't sit well

---

conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

N.D. Ga. Civ. R. 56.1(B). However, Sumbak waived these arguments by failing to object to the magistrate judge's R&R despite a prior warning of the consequences of not objecting. 11th Cir. R. 3-1 (providing that a party who fails to object to the R&R "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object"); *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993). In the absence of proper objections, we may review the factual and legal findings "on appeal for plain error if necessary in the interest of justice." 11th Cir. R. 3- 1. Although Sumbak argues generally that the district court "failed to consider some of [his] evidence," he fails to identify any specific evidence or instance of plain error. Accordingly, we find no plain error in any of the district court's factual findings.

with me when they don't want to work with me." After Biggins declined to take any corrective measures, Sumbak spoke to Mr. Hoover—Biggins's boss—who sent Matt Stephens—a human resources employee—to conduct an investigation. Stephens identified that an employee named Casey was causing the issue and relayed that to Sumbak. After Sumbak met with Casey, Biggins, and Stephens, he started getting more help in his work. No Eaton employees ever made racially derogatory or racially offensive comments toward Sumbak.

Eaton's employees are paid according to salary grades, and each position has a range of salary grades associated with that position. The salary grades associated with the Production Technician position are SG34, SG36, and SG38. Plaintiff is currently paid at the SG38 rate—the highest in the range for his position. Once an employee at Eaton reaches the highest salary grade associated with her or his current position, the employee must move to a position with a higher salary grade to advance. To obtain a new position, the employee must go through Eaton's application process, which includes the interview and selection process.

Eaton only creates positions at the SG40 rate when there is a specific business need. Since January 2016, the Smyrna facility has one SG40 position—Lead Quality Technician (tester). Eaton created the tester position, the first SG40 position at the Smyrna facility in about ten years, in response to a spike in quality issues.

In early 2016, Eaton notified employees at the Smyrna office about the newly created tester position but did not mention its higher salary grade. Sumbak, an electrician, did not apply for this position because he did not feel like he could do testing. Even if Sumbak had known that the position had the salary grade of SG40, he would not have applied for it. At some time, Sumbak was notified that the open position for tester was posted on Eaton's internal website where any interested employee could view the position, along with the salary grade, and apply.

Eaton hired Vincent Kee, a black male and Sumbak's coworker, for the tester position. Sometime in 2016, Sumbak informed Biggins that he desired to transfer out of the Smyrna facility because he was "not growing" there and wanted an SG40 position. According to Sumbak, Biggins responded that he did not need to transfer for an SG40 role because Biggins would "take care of" it. Biggins also said that he would talk to Hachey about "the next date" for a promotion and encouraged Sumbak to take a class at Eaton University, an internal training program, in order to get the promotion. Sumbak expected to receive a SG40 promotion at the end of 2017. He did not.

On February 26, 2018, Sumbak received a "P" rating on his annual review, signifying "satisfactory" performance. According to Sumbak, Hachey told him that this rating, along with the fact that the Smyrna facility did not need another SG40 position, were the reasons that he could not be promoted.

In March 2018, Sumbak was provided a cross-training opportunity in another department. Sumbak remained an SG38 while doing this cross-training but was no longer allowed to work overtime. Meanwhile, a white employee who had only been with the company several months was temporarily transitioned into Sumbak's old position, which included leadership responsibilities. Sumbak's cross-training period lasted three to four months, ending when Sumbak's replacement quit.

According to Sumbak, at some point, Hachey told him that, given his lack of a college degree, he should be happy with the amount of money he makes. Sumbak later acknowledged that Hachey did not mention race or national origin when he made this comment.

Sometime in 2017, Sumbak wrote a letter to Eaton's CEO about the perceived deception related to his promotion and the unfair treatment he received. Sumbak did not mention race in the letter, but stated that he was from Africa, complained about the lack of promotion, Hachey's comment about his education, and his belief that he was not being treated fairly. But the CEO never received the letter.

Sumbak filed a charge with the Equal Employment Opportunity Commission (EEOC) on March 28, 2018. The EEOC charge asserted a claim for discrimination based on race and national origin based on the following: (1) Sumbak received a "P-rating on [his] annual review which resulted in [him] not being promoted to a Grade 40," (2) Sumbak was denied a transfer to

another location, (3) Sumbak was removed from his job and replaced by a less qualified white male, and (4) Sumbak was no longer able to work overtime. The EEOC issued a dismissal and notice of right to sue letter on December 28, 2018.

## II.    Procedural History

Sumbak filed his counseled complaint in March 2019, alleging claims for discrimination based on race and national origin, retaliation, and hostile work environment in violation of Title VII and race-based discrimination in violation of § 1981. Eaton moved for summary judgment, attaching a statement of undisputed material facts to its filing. Sumbak opposed the motion and filed a response to Eaton's statement of undisputed material facts. The magistrate judge issued a R&R, accepting the facts submitted by Eaton that were supported by citations to record evidence and that were not specifically disputed and refuted properly by Sumbak in his response. The magistrate judge concluded that Sumbak failed to provide sufficient direct, circumstantial, or statistical evidence to plead a *prima facie* case of discrimination, retaliation, or a hostile work environment. Turning to Sumbak's failure to promote claim, the magistrate judge concluded that he could not establish a *prima facie* case because he never applied for the tester position. And, assuming there were other SG40 positions, Sumbak failed to show he applied, was rejected, and that an equally or less qualified person outside of his protected class got the position. With regard to retaliation, the magistrate judge found that the adverse actions of which Sumbak complained of—failure to promote, refusal of

overtime, and the P rating on his performance evaluation—all occurred before the protected conduct upon which his claim relied—the filing of the EEOC complaint—and therefore those actions could not constitute retaliation for the protected conduct. Further, even though the refusal of overtime continued after the filing of the EEOC complaint, the magistrate judge held that because it was an adverse action initially taken prior to the protected conduct, temporal proximity alone could not establish causation. As for Sumbak's hostile work environment claim, the magistrate judge concluded that it fell outside the scope of the EEOC charge. But, even assuming such a claim was within the scope, the facts nevertheless did not establish "an environment that rose to a sufficiently severe level."

The court notified the parties and their counsel that they had 14 days in which to object to the R&R, and that "[i]f no objections [were] filed, the [R&R] may be adopted as the opinion and order of the District Court, and on appeal, the Court of Appeals will deem waived any challenge to factual and legal findings to which there was no objection, subject to interest-of-justice plain error review." Yet, Sumbak did not object. After reviewing the record for plain error and finding none, the district court adopted the R&R and granted summary judgment for Eaton. Sumbak appealed.

## III.    Standard of Review

We typically review a district court's order granting summary judgment *de novo*, "viewing all evidence, and drawing all reasonable inferences, in favor of the non-moving party."

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). However, when, as here, a party fails to object to a magistrate judge's dispositive R&R, he "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," provided that he was informed of the window for objecting and the consequences for failing to do so. 11th Cir. R. 3-1.

When a party fails to make a proper objection to the R&R, we may review the factual and legal conclusions for plain error when "necessary in the interests of justice." *Id.* "Plain error review is an extremely stringent form of review." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999). To prevail on plain error, an appellant must identify (1) an error, (2) that was plain—meaning clear or obvious—and demonstrate that (3) the error affected the party's substantial rights; and (4) "not correcting the error would seriously affect the fairness of the judicial proceeding." *Id.* Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the summary judgment record, "we must view the submitted evidence in the light most favorable to the non-moving party." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

## IV.    Discussion

### A. Failure to Promote Claim

In his brief, Sumbak challenges the district court's factual finding that he did not apply for the SG40 position, insisting that he never made such an admission, and that Eaton knew Sumbak wanted the position. Additionally, he argues in passing that there was unspecified evidence from which a jury could infer that Eaton's refusal to promote Sumbak was caused by racially-based discriminatory intent.

Title VII makes it unlawful for a private employer "to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a). Similarly, § 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including private employment contracts. 42 U.S.C. § 1981(a); *Ferrill v. Parker Grp.*, 168 F.3d 468, 472 (11th Cir. 1999). For employment contracts, claims of intentional discrimination under § 1981 are analyzed under the same framework as claims of discrimination under Title VII. *Ferrill*, 168 F.3d at 472.

Pursuant to Title VII, a plaintiff may prove a discrimination claim through circumstantial evidence, generally analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *E.E.O.C.*

v. *Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002). Under the *McDonnell Douglas* framework, a plaintiff "carries the initial burden of establishing a *prima facie* case of discrimination." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).[2]

For failure to promote claims, a plaintiff may establish a *prima facie* case of discrimination by showing that: (1) he was a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) the individual who received the promotion was not a member of his protected class and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).

Sumbak admitted in his deposition that he did not apply for the tester position, stating, "so for me, I'm an electrician. So I'm not going to apply as a tester," and he has not pointed to any portion of the record contradicting these comments. Thus, the district court did not plainly err by holding that Sumbak could not make a *prima facie* case for discrimination for failure to promote. *Id.*

---

[2] We note that the district court concluded that Sumbak identified no direct or statistical evidence to support his claims. Because he does not challenge that finding on appeal, he abandoned any challenge on this ground. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (explaining that a party can abandon an issue on appeal by failing to "plainly and prominently" address it in his opening brief).

The district court also analyzed whether some other unspecified SG40 position was promised to Sumbak and then denied to him because of his race. The district court did not plainly err by holding that Sumbak did not establish a prima *facie case* because he failed to produce evidence showing that he applied for and was rejected from an open SG40 position, or that another equally or less qualified employee who was not a member of the protected class was promoted to such a position.

### B. Retaliation Claim

Sumbak further maintains that the district court erred by disregarding much of his unspecified evidence on his retaliation claim and by failing to properly apply *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). In *Drago*, we held that "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago*, 453 F.3d at 1308. Sumbak argues that unlike the plaintiff in *Drago*, he has "multiple issues" that were "days and weeks in proximity [to the protected conduct] respectively, not 'three and one-half months.'" But he fails to specify to which issues he is referring, what the protected conduct was, what adverse actions are at issue, or how the district court's determination was plainly erroneous. Hence, we conclude that he has abandoned any challenge to this issue. *Sapuppo*, 739 F.3d at 681; *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir.2009) (explaining that "simply

stating that an issue exists, without further argument or discussion [or specific citations to the record], constitutes abandonment of that issue and precludes our considering the issue on appeal" (quotation marks omitted)).

Even assuming, arguendo, that Sumbak did not abandon his retaliation claim, he still failed to show that the district court's ruling was plainly erroneous. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) that the adverse action was causally related to the protected activity. *See Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). Here, the only instance of protected conduct that Sumbak did not abandon or concede—filing his EEOC charge—took place after he received a "P" rating and after he was denied overtime. Under our precedent, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action," which Sumbak failed to do here. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Therefore, the district court did not plainly err by holding that Sumbak failed to show sufficient evidence of causation when the adverse employment actions occurred before Sumbak's protected activity and he provided no other evidence of causation beyond temporal proximity. *See id.*; *Drago*, 453 F.3d at 1308 (holding that "in a retaliation case, when an employer contemplates an adverse employment action before an employee

14                    Opinion of the Court                    21-11106

engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

### C.  Hostile Work Environment

Finally, Sumbak contends that the district court erred in concluding that his hostile work environment claim was barred because it did not relate to his EEOC charge.  He maintains that given his allegations about Eaton's failure to promote him, his performance review, and refusal of overtime, "[a]ny rational person subjected to such systemic behavior at work would feel that [the] environment was hostile."

Before filing a Title VII action, a plaintiff must file a charge with the EEOC.  *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  We have noted that "judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but "allegations of new acts of discrimination are inappropriate."  *Id.* at 1279–80 (quotation omitted).  We are generally reluctant to allow technicalities to bar Title VII claims and have cautioned that "the scope of an EEOC complaint should not be strictly interpreted."  *Id.* at 1280 (quotation omitted).  Thus, the question is whether the allegations in the complaint are "like or related to, or grew out of, the allegations contained in [the] EEOC charge."  *Id.*

In his EEOC charge, Sumbak alleged as follows:

> I began working for the employer on December 1, 2000, as an Assembly Tech.  In 2012, I transferred to the [Smyrna] location.  My most recent position was Bus Layered Lead.  On February 26, 2018, I received a P-rating on my annual review which resulted in me not being promoted to a Grade 40.  Also, in 2016, I requested and was denied a transfer to another location in Austin, Texas.  On March 26, 2018, I was removed from my job and replaced by a recently hired less qualified White male.  I am presently performing odd jobs in the plant and I am no longer able to work overtime.

> I believe that I have been discriminated against because of my race (African-American), and national origin African (Sudanese), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Nothing in Sumbak's EEOC charge mentioned anything about his coworkers refusing to help him with tasks or treating him unfairly, which was the basis of Sumbak's hostile work environment claim. Accordingly, there was no plain error in the district court's conclusion that the hostile work environment claim was not presented to the EEOC, and that the claim could not reasonably be expected to grow out of the EEOC charge. *Gregory*, 355 F.3d at 1280.

**AFFIRMED**.